[No. 18137. Department Two. December 10, 1923.]

RALPH SLITER, *Appellant*, v. R. W. CLARK *et al.,*
*Respondents.*[1]

HIGHWAYS (53)—NEGLIGENCE—RIGHT OF WAY AT INTERSECTIONS—
VIOLATION OF STATUTE—QUESTION FOR JURY. Under Rem. Comp.
Stat., § 6340, requiring drivers approaching highway intersections
to look out for and give right of way to vehicles simultaneously ap-
proaching on their right, an automobile driver is guilty of negli-
gence in crossing a much traveled paved road without sign or
change of speed so as to place his car directly across the path of a
motorcycle, approaching in plain view from the right.

SAME (53)—NEGLIGENCE—RIGHT OF WAY AT INTERSECTIONS—CON-
TRIBUTORY NEGLIGENCE. In such a case, the driver of the motorcycle
is not guilty of contributory negligence in not slackening his speed,
where he was traveling on the right-hand side of the road at a law-
ful rate of speed; since he had the right of way and could assume
that the driver of the automobile would comply with the law.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered March 27, 1923, in
favor of defendants, upon granting a nonsuit, in an
action for personal injuries sustained in an automobile
collision. Reversed.

*Henry Arnold Peterson,* for appellant.

*Remann & Gordon (Reynolds, Ballinger & Hutson,*
of counsel), for respondents.

FULLERTON, J.—This is an action brought by the
appellant, Sliter, against the respondents Clark, to
recover for personal injuries. On the trial, at the
conclusion of the appellant's case, the respondents
moved the court to discharge the jury and enter a
judgment of nonsuit on the ground that the evidence
on the part of the appellant failed to sustain his cause
of action. The court granted the motion, entering a
judgment of dismissal.

[1]Reported in 220 Pac. 785.

The accident causing the injury for which recovery is sought occurred on the Pacific Highway, a short distance northerly from a point where the highway crosses the southerly line of the government military reservation known as Camp Lewis. At the time of the accident, the appellant was riding a motorcycle which had a side-car attachment. Immediately preceding it, he was traveling northerly on the paved part of way, on what was to him its right-hand side, at a speed of approximately twenty-five miles per hour. The statute permitted a speed at this place of thirty miles per hour. At this time, the respondents approached the paved highway from the left on an intersecting highway, driving a Nash automobile. As they reached the highway, they not only drove upon it, but drove directly across it immediately in front of the approaching motorcycle of the appellant, compelling the appellant, in order to avoid a collision, to turn his vehicle from the roadway to the right. On leaving the roadway the motorcycle came into contact with debris lying on the side of the way, overturned and caused the injuries to the appellant for which he sues.

The evidence disclosed that the paved highway was straight for a considerable distance on each side of the place where the accident occurred; that both the paved highway and the intersecting highway on which the respondents approached were in the open, with nothing to obstruct the view of either of the parties, and that the appellant did see the respondents' approaching car for some distance before it reached the pavement. The appellant testified, however, that the respondents gave no signal indicating what their intention was on reaching the highway; that is, whether they intended to turn to the right, turn to the left, or proceed directly across it.

Arguing from these premises, the respondents' counsel say that they "fail to see where, in any particular, the respondents were guilty of negligence"; and further, that their conduct "gave every intention of their purpose to cross the pavement," and that they "had a perfect right to assume that plaintiff [appellant] recognized this evident purpose and would act as a reasonably prudent man and protect himself to avoid a collision." But to us the facts argue a directly contrary conclusion. It seems to us that the respondents were not only guilty of negligence, but were guilty of negligence of the gravest sort. The statute has laid down certain rules of the road for the guidance of persons driving motor vehicles over the public highways. It has provided that "drivers when approaching highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point"; (Rem. Comp. Stat., § 6340, subd. 4 [P. C. § 222], and has made it a penal offense to violate the provision. (Id., § 6354) [P. C. § 226]. Plainly, as the facts now appear in the record, the respondents violated this mandate of the statute. They were approaching the intersection of the highways from the appellant's left. They had not sufficient time to pass in front of him without interference at the rate of speed he was approaching, which rate was well within the maximum speed limit. It was their duty, therefore, to look out for him and give him the right of way. Failing in this, they violated the statutory command, and were thus guilty of negligence as a matter of law. *Ebling v. Nielsen,* 109 Wash. 355, 186 Pac. 887.

But aside from this, we think that, were there no statute on the subject, the question whether the respondents were guilty of negligence would have been for the jury. In such a case, their conduct would have

been measured by the rules of ordinary prudence; that is to say, whether, under the given circumstances, their conduct was that of ordinarily prudent persons, and we think it manifest that there was here ample evidence to support a conclusion that it was not.

But the trial court seems to have rested its conclusions in part, at least, on what it conceived to be the contributory negligence of the appellant. In passing upon the motion to dismiss, it used this language:

"I was impressed with the young man's statement on the stand as to its truthfulness and at the time when he made the statement that he, noting this situation, continued at exactly the same rate of speed. I then reached the conclusion that he was necessarily negligent, because there was another car in sight which he saw and he did not change his speed in any way and I feel as a matter of law the court would have to hold that was negligence; . . . I am also considering that Sliter had the right of way, but certainly the situation was such that he should have reduced his speed, and be prepared to meet any emergency that might happen there. It is easy enough to say after an accident that which a man ought to do, but I was impressed with the statement of the other parties coming the other way of what they did—observing Clark's car approaching, they slackened their speed and of course got by without any trouble. . . . The court is in fact holding that while Sliter was going at a lawful rate of speed that there was no absolute right to that speed when the situation is such that it would require a reduction of speed. It seems to me the case turns on that very fact, which impressed me as the evidence came out, that he at no time changed his rate of speed when he clearly saw Clark approaching there."

In so holding, we think the court mistook the applicable principles of law governing in such cases. As we have shown, it is the statutory duty of a driver of a motor vehicle when approaching a road intersection

to look out for and give way to vehicles simultaneously approaching on his right. No such duty is imposed upon a driver as to vehicles approaching on his left. The driver of such a vehicle, if he is traveling within the speed limit and on the right-hand side of the highway, may proceed on his course without being guilty of a charge of negligence. This was the situation here. The appellant and the respondents were simultaneously approaching the road intersection. The appellant was on the right of the respondents, he was traveling on the right-hand side of the way, and was traveling within the statutory speed limit. He had the right to presume that the respondents would give heed to the statutory rules of the road, and not drive their car across the road immediately on his front. We cannot think, therefore, there was any reason to charge him with contributory negligence as matter of law. The question was for the jury and not the court.

The court's reference to the other approaching car is hardly appropos. This approaching car was traveling in a direction opposite to that of the appellant. It was thus upon the left of the respondents, and, under the terms of the law, its driver was obligated to look out for and give them the right of way. The driver of that car did what the rules of the road required him to do, and his conduct cannot be a guide to measure the duty of the appellant, whose situation did not require him to give the right of way to the respondents.

The respondents contend that the motion for nonsuit was properly granted because the physical facts as testified to by the appellant show that the accident could not have happened in the way described by him. This contention is based on the estimates made by the appellant of the distances between the relative situa-

tions of the respective vehicles shortly prior to and immediately preceding the accident. But, aside from the fact that assuming these estimates to be accurate it could not be said that he testified to an impossibility, the estimates given are not a controlling question. They were mere estimates, and, as we said in *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, "can hardly discredit positive testimony to the point of incredibility as a matter of law." The positive testimony was that the respondents drove upon the paved highway immediately in front of the appellant's vehicle, leaving the appellant no opportunity to avoid a collision other than by turning his vehicle off that part of the highway prepared for travel. The question whether the appellant's description of the acts and situations of the parties prior thereto belied his testimony as to this principal fact was for the jury, and not the court.

The judgment is reversed and the cause remanded for a new trial.

MAIN, C. J., MITCHELL, PEMBERTON, and BRIDGES, JJ., concur.