[No. 18273.   Department Two.   February 20, 1924.]

ELDRIDGE BACON, *by his Guardian ad Litem E. Bacon,
Respondent,* v. L. M. VARNEY *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (379, 380)—USE OF STREETS—COLLISION
AT CROSSING—RIGHT OF WAY—VIOLATION OF ORDINANCE.   A recovery
for injuries to a boy on a bicycle, struck at a street intersection by
an automobile, is sustained where the boy had the right of way and
the defendant "cut the corner," changing his course across the boy's
line of travel so closely in front of him that the boy could not avoid
the collision.

Appeal from a judgment of the superior court for
Spokane county, Webster, J., entered March 3, 1923,
upon findings in favor of the plaintiff, in an action for
personal injuries sustained in a collision with an auto-
mobile, tried to the court.   Affirmed.

*Danson, Williams & Danson* and *Poe, Falknor &
Falknor (R. E. Lowe,* of counsel), for appellants.

*Tustin & Chandler,* for respondent.

MITCHELL, J.—This action is to recover damages for
personal injuries received by Eldridge Bacon, a boy
ten years of age, as a result of a collision, while riding
a bicycle, with an automobile operated by appellant
L. M. Varney.   The case was tried without a jury.

The collision occurred in daylight, at the crossing of
Grand avenue, which runs slightly west of north, and
Seventeenth street, which runs east and west, in the
city of Spokane.   The only witnesses who testified as
to how the accident happened were the boy and Mr.
Varney.   The boy was traveling north on the east side
of the avenue a few feet from the curb, while the ap-
pellant was going south on the west side of the avenue
near the curb, simultaneously approaching Seventeenth

[1]Reported in 223 Pac. 322.

street. Before reaching Seventeenth street, each saw the other and neither was traveling at an excessive rate of speed. The course of the boy was continuously to the north, while that of the appellant was easterly across the avenue upon reaching Seventeenth street. It satisfactorily appears that, before reaching Seventeenth street, each slowed down and continued to do so until the collision occurred. Before reaching Seventeenth street, the boy observed a signal by Varney indicating that he intended turning west, and then, in a moment of time, noticed he turned east, too late, however, for the boy to avoid the collision. Varney testified that the signal he gave indicated his intention to turn to the east, as he did turn, and that, prior to the signal, he saw the boy south of Seventeenth street and "watched him all the way because he was afraid of him."

In an important particular there is a square dispute between the parties. Varney testified that he got into the intersection first, turned east after he got south of the center of Seventeenth street, and that the collision occurred about the center of Seventeenth street at a point on an extension of the east curb line of Grand avenue. The boy testified that, when he was about seven yards south of the cross-street, Varney was about twelve yards north of it, at which time the signal referred to was given, and that, at the time of the collision and the stopping of the automobile, the automobile was within about two feet of the curb at the northeast corner of the street intersection, facing south of east. The automobile was stopped immediately upon the happening of the accident. There is no doubt that, because of the collision, the boy was thrown on the northeast curb and his bicycle a few feet to the west on Grand avenue.

There was no testimony that the course of the automobile was changed after it started easterly. Out of this conflict the trial court found, not that after Varney got into the intersection, but "when he reached the intersection" he changed his course to an easterly direction across the line of travel of the boy and so closely in front of him that the boy could not, by the use of reasonable caution, avoid the collision, that the boy used reasonable care under the circumstances, and that as a result of the act of Varney his automobile came into collision with the bicycle "near the curb on the northeast corner of said streets." It appears to have been a case of "cutting the corner" by the appellant to get ahead of the boy.

Our attention has not been called to any ordinance prescribing the rights of persons with reference to the fact of which first enters a street intersection. Subdivision (6), § 6340, Rem. Comp. Stat. [P. C. § 222], provides:

"Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point: . . ."

Subdivision "g," § 9, of the traffic ordinance of Spokane is in language identical with the state law. The law is applicable here. Both of these vehicles were moving, simultaneously approaching a given point at a street intersection, the respondent being on the right. The appellant frankly admitted in cross-examination that as they were traveling one of them would have to stop or turn aside to avoid a collision. He did neither. He further testified that, after he turned across Grand avenue towards the boy, the boy did not increase his speed, and he practically admitted that the boy slowed down somewhat. He said, speaking of the boy, "He should have turned to his right—

he should have turned to his left," and again, "I stopped just as quick as I saw, when I saw he was not slowing down. If he had slowed down I would not have stopped." It is the fact, however, that he did not stop until just after the collision. And this shows the weakness of his case. He, who was required by the law to give the right of way, was expecting it to be given to him. The boy, exercising his right of way, used it until he found it was denied him, at which time it was too late for him to avert a collision.

Some charge is made against the boy because the brakes on his bicycle were slightly defective. But, what of it? Suppose he had no brakes at all on his wheel? The boy was exercising a right of way openly, observed and watched by the appellant, that was given to him by the same law which at that time was being violated by him who makes the charge.

In our opinion, the judgment is proper and it is affirmed.

Main, C. J., Pemberton, Fullerton, and Bridges, JJ., concur.