[No. 15897.   Department One.   July 13, 1920.]

ARCHIE B. NOYES, *Respondent*, v. SCHOICHIRO KATSUNO, *Appellant*.[1]

MUNICIPAL CORPORATIONS (383, 391)—STREETS—COLLISION—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. The driver of a taxicab which was on the right side of the street near the curb is not guilty of contributory negligence in suddenly turning to the left to avoid a head-on collision with an auto truck which was approaching on the wrong side of the street at a high rate of speed and cutting a corner, where there was no room to turn to the right and his passengers were in great peril.

Appeal from a judgment of the superior court for King county, Hall, J., entered July 29, 1919, upon findings in favor of the plaintiff, in an action for damages to personal property, tried to the court. Affirmed.

*William U. Park* and *Paul S. Dubuar*, for appellant.

*Totten & Totten*, for respondent.

PARKER, J.—Plaintiff, Noyes, seeks recovery of damages which he claims to have suffered from injuries to his taxicab automobile caused by the negligence of Katsuno, in that the latter negligently drove his auto truck so as to cause it to come into collision with the plaintiff's automobile at the intersection of Brintnall Place and Fifteenth avenue northeast, in the city of Seattle. A trial in the superior court for King county sitting without a jury, resulted in findings and judgment in favor of the plaintiff, awarding him recovery against the defendant in the sum of $300, from which the defendant has appealed to this court.

Brintnall Place is a street running in a westerly and easterly direction. Fifteenth avenue comes into it from the north. These two streets, in so far as the

[1]Reported in 191 Pac. 419.

general course of travel thereon is concerned, are much like one continuous street with a bend at the place in question, forming an angle of about 100 degrees. The paved roadway of Brintnall Place at and just east of the intersection is thirty-eight feet wide. The paved roadway of Fifteenth avenue is twenty-five feet wide. At the time in question, respondent, Noyes, was driving his automobile westerly along Brintnall Place, approaching Fifteenth avenue with a view to turning north in that avenue. He was returning from a funeral and had several passengers in his automobile. His automobile and the truck of appellant, being driven by himself, came into collision in the intersection of the two streets.

Respondent claims that he was driving at the rate of seven or eight miles per hour, close to the curb of Brintnall Place, and well within the north half of the paved roadway when he approached the northeasterly corner of the street intersection; that, when he arrived within a few feet of the corner, he saw appellant's truck coming at a high rate of speed, twenty or twenty-five miles per hour, turning from Fifteenth avenue into Brintnall Place, and cutting across the corner directly towards his (respondent's) automobile; that it instantly became apparent to him that there was going to be a collision between the two automobiles unless he turned either to the right or to the left; that he could not turn to the right and escape the impending collision because there would not be room between the curb and the course of appellant's truck to safely pass and avoid such collision; that, finding himself and his passengers in such a position of sudden peril, he turned his machine to the left and stepped on the accelerator with a view to speeding up and allowing the truck to pass to his right, the course which it was manifestly taking at such a high rate of speed; that

appellant, an instant later, turned to his right, and the two machines came together on the south side of the roadway not far from the south curb thereof. This is the substance of respondent's version of the accident as told in his testimony. It is corroborated in most of its material particulars by one of his passengers, who seems to have been a disinterested witness. Appellant claims that his truck was at no time east or north of the center line of either of the two streets, and that, had respondent merely continued on his course, there would have been no collision, though he claims that respondent's automobile was much further to the south—that is, towards respondent's left—than he claims.

We think the evidence was such as to warrant the trial court in believing that respondent was well to the right side of the roadway, where he had a right to be under the law of the road; that he was moving at a low rate of speed, while appellant was moving at a high rate of speed and cutting across the corner in such a manner as to threaten a head-on collision with respondent near the curb at the northeast corner of the intersection; that the situation thus created by appellant was such as to render it apparent to respondent that he and his passengers were suddenly placed in a position of great peril; that he was induced thereby to turn to the left with a view of avoiding a collision; and that had he not done so, the injury would probably have been far more serious than resulted. As it was, no one was hurt, the only resultant injury being to the truck and automobile.

Counsel for appellant contend that respondent should not be allowed to recover because the collision actually occurred upon the south side of the roadway—that is, south of the middle of the roadway at a point where appellant had a right to be with his truck—and that

this must be so because respondent violated the law of the road in going to that side of the street. This contention would be well grounded if appellant's actions had not been the cause of respondent going to the south side of the street. The evidence being such as to warrant the trial court in believing that appellant created such a condition of apparent sudden peril to respondent and his passengers, we think appellant could not be heard to say that respondent was guilty of negligence in turning to the south side of the street.

Counsel rely particularly upon our decision in *Lloyd v. Calhoun*, 78 Wash. 438, 82 Wash. 35, 139 Pac. 231, 143 Pac. 458. That was a case where two automobiles were approaching each other on a road on a smooth, open prairie, where there was ample room to turn to the right on either side, even off the traveled portion of the road. It became largely a question as to whether or not respondent's turning of his car to the left and colliding with appellant was excusable under the circumstances—that is, whether or not his thus violating the law of the road was excusable. Judge Morris, in the dissenting opinion, following the first hearing, and which, upon rehearing, became the majority opinion, speaking for the court, held that such turning to the left by respondent was plainly not excusable, and therefore was negligence on his part and was the proximate cause of the collision. In that case respondent's car was in no such situation as we find respondent's car in this case. Adopting the view entertained by the trial court, which we think the evidence supports, we find respondent in such position that he could not turn to the right and avoid the apparent impending collision, and that his only possible chance to avoid the collision, or to render it less disastrous, was to turn to the left. In *Sheffield v. Union Oil Co.*, 82 Wash. 386, 144 Pac. 529, we have a decision written

also by Judge Morris, where the one violating the law of the road was excused for doing so and absolved from the charge of contributory negligence, because of the sudden peril in which he was placed by the driver of the oil company's truck. That, we think, is, in substance, this case. 2 R. C. L. 1196.

Some contention is made that the amount of respondent's damages was not sufficiently clearly shown. This, we think, is without merit. It is true that the evidence as to the exact amount of respondent's damages actually suffered is not very satisfactory, but it is so plain that he suffered at least $300 damages that we do not feel called upon to further discuss this question.

The judgment is affirmed.

HOLCOMB, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.