IKE F. HARTMAN, Administrator, Appellee, v. RED BALL TRANSPORTATION COMPANY et al., Appellants.

No. 40371.

NOVEMBER 11, 1930.

*H. B. White* and *Havner, Flick, Huebner & Powers,* for appellants.

*Comfort & Comfort,* for appellee.

STEVENS, J.—East Fourteenth Street, which is traversed by double tracks of the street railway, lies north and south, and is intersected and crossed by Fremont Street. The width of East

Fourteenth Street between the curbs is 34 feet, and that of Fremont, 26 feet. The incline of Fourteenth Street as it approaches the intersection from the south, and of Fremont Street as it approaches from the west, is slightly downward.

On the morning of June 3, 1929, a bus belonging to the appellant Red Ball Transportation Company, which was driven by the appellant Albert Pepin, collided with an Oakland touring car driven by Thad S. Babcock, who was thrown therefrom and under it, with the result that he received injuries from which death resulted, a few minutes later.

The argument of appellants is devoted almost wholly to their contention that the deceased was guilty of contributory negligence, causing the injury, and that their motion for a directed verdict, made at the close of the testimony for plaintiff and renewed after both parties had rested, should have been sustained. Ordinarily, the question of contributory negligence is for the jury, and is not to be determined by the court as a matter of law.

The evidence as to many material matters is in hopeless con-

fusion and conflict in this case. There is substantial agreement, however, as to the main physical facts.

The bus of appellant approached the intersection from the south on East Fourteenth Street, and the touring car from the west, on Fremont. It is not possible to say from the evidence the exact location of the touring car on the intersection when the collision occurred. The jury would have been warranted in concluding that it had passed the center of Fourteenth Street, and that the right wheels were south of the center of Fremont. The testimony is in substantial accord that the car was east of the center of Fourteenth Street. The car was struck by the bus from the right about the center, and driven to the northeast corner of the intersection with such force as to break off a pole about six inches in diameter, which was struck by the car.

The testimony on behalf of appellee tended to show that, as deceased was proceeding on Fremont, he was looking for a street number on the north side thereof, and that his face was turned in that direction until the bus was within 15 feet of the car. The witnesses for appellee estimated the speed of the car as it approached and entered the intersection at from 5 to 15 miles per hour. One of the occupants of the car testified that it was stopped, or practically so, before the intersection was entered, and that the driver and he both looked south, and that the bus was then 70 or 80 feet south of the intersection, proceeding northward at a speed of 30 to 35 miles per hour. All of the witnesses for appellee testifying on the point stated that the touring car first entered the intersection. The witnesses for appellants estimated the speed of the touring car at from 30 to 40 miles per hour, and of the bus at from 18 to 20. There is some variance in the testimony of the witnesses for appellants as to the relative location of the bus and touring car as they approached the intersection, but the jury could have found from their testimony that the bus was 20 feet south of the intersection, moving at from 18 to 20 miles per hour, when the touring car was equally distant on Fremont from the intersection, and that the bus preceded the car therein.

An occupant of the car called by appellee testified that he saw the bus after entering the intersection, and after having passed the center thereof to the east, when it was 15 feet away, and that the driver of the car immediately accelerated its speed.

The witnesses for appellants agree that the driver of the bus, when 10 feet from the intersection, applied both the emergency and foot brakes. The driver of the bus testified that the brakes were in good condition.

Two witnesses called in behalf of appellee, however, testified that the driver of the bus stated, immediately after the accident, that, as the touring car approached the intersection, its speed was so reduced that he thought it was going to stop, and that he then proceeded to cross the intersection, and that his brakes did not work properly. The intersection and both streets were apparently free from obstructions for some distance either way therefrom, and there can be no doubt but that the collision could well have been avoided.

The testimony on behalf of appellants was that the driver of the bus sounded the horn and applied the brakes simultaneously. At least one witness testified that no horn was sounded, and other witnesses for appellee said they did not hear any warning.

We have omitted from the foregoing statement some minor details. On the record, substantially as stated above, we are asked to hold that the driver of the automobile was guilty of contributory negligence, causing the collision. Perhaps one other further detail should be stated: that is, that the testimony of some of the witnesses for appellants tended to show that the car was at all times north of the center of Fremont as it entered and proceeded across the intersection. Apparently the car was turned slightly to the left, and the bus to the right, immediately before the collision. The bus was 6 or 8 feet in width and 25 feet in length,—nearly the width of Fremont Street.

Section 5035 of the Code, 1927, provides that:

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way provided, however, that such vehicles coming from alleys and private drives, where view is obstructed, shall stop immediately before entering a public street or highway."

This section has been repeatedly construed in prior decisions of this court, and the relative rights of the respective parties approaching and entering an intersection fully and clearly stated.

68

*Carlson v. Muesberger,* 200 Iowa 65 ; *Roe v. Kurtz,* 203 Iowa 906 ; *Shuck v. Keefe,* 205 Iowa 365 ; *Lein v. John Morrell & Co.,* 207 Iowa 1271.

. The bus of appellants approached the intersection from the favored direction,—that is, from the right. If the jury believed from the testimony introduced in behalf of appellee that the bus was 70 or 80 feet from the intersection at the time the car reached the same, no one would contend that the driver thereof was guilty of contributory negligence in attempting to immediately proceed across the street. In such circumstances, he was not bound to wait for the bus to cross the intersection, but had a right to proceed. *Lein v. John Morrell & Co.,* supra. The speed of the vehicles approaching the intersection at every instant material to the controversy was a question of fact, to be determined by the jury. If, on the other hand, the bus, traveling from the right, first entered the intersection, and the driver of the car proceeded to cross the same simultaneously, without looking, and without regard for his own safety, he would clearly be guilty of contributory negligence, as a matter of law. The question as to which vehicle first entered the intersection was one of fact, for the jury. There is no possible hypothesis upon which the testimony of the witnesses, either as to the speed or relative position of the respective vehicles at any instant preceding the collision, may be determined absolutely. The driver of the car, if properly upon the intersection, had a right to assume that the driver of the bus would not unlawfully use the street. *Lein v. John Morrell & Co.,* supra, and authorities cited. If the driver of the automobile accelerated its speed when the bus was 15 feet from it, he must have looked to the right, or in such direction as to observe the approach of the bus. The testimony tended to show that the car, if traveling at no greater speed than 15 miles per hour, could have been stopped within a distance of 6 feet. Whether the driver thereof should have applied the brakes or accelerated the car, in the exercise of his duty to observe ordinary care, under the circumstances, could hardly be said to be a question of law. The driver of the automobile approaching an intersection and finding no one approaching it from the right within such distance and under such circumstances as to reasonably indicate danger of collision, is under no obligation to stop, but may lawfully proceed on his way. The jury could, therefore, under the

evidence in this case, have found that the driver of the car lawfully entered and attempted to cross the intersection. Possibly the jury might and should have found that the driver of the car was guilty of negligence which contributed to the injuries resulting in his death, but it would seem obvious that the evidence is not of such a certain and definite character as to enable the court to so find as a matter of law. Many cases are cited from other jurisdictions, quoted from and relied upon by appellants. It would be unprofitable to review these cases. The facts, physical and otherwise, of this case must be looked to, to determine the issue.

Much reliance is placed by appellant upon *Middleton v. Omaha & C. B. St. R. Co.*, 209 Iowa 1278. There is nothing either in the facts and circumstances of this case or in the commentary of the court thereon that is in conflict with the conclusion we have reached herein. The facts of the two cases are wholly dissimilar. The conclusion reached in the *Middleton* case was clearly right.

While the case before us is not wholly free from doubt or difficulty in many of its phases, we are clear that contributory negligence causing the injuries of the deceased is not established as a matter of law. Some of the witnesses on both sides modified and materially changed the testimony given upon the trial below from that given before the coroner's inquest. This regrettable fact does not present a question of law for the court, but a question of fact for the jury, which must determine the credibility of the witnesses. Further consideration of this point is unnecessary.

The grounds of negligence relied upon by appellee are specifically alleged in separately numbered paragraphs of the petition. It is now contended by appellants that no one of the specific  grounds of negligence alleged was established by the evidence, and that, as a result, no negligence on their part is properly alleged or proven. With this contention we do not agree. It is alleged that the bus was driven in a careless, reckless, and imprudent manner, and without regard for others using the highway. There was evidence from which the jury could so find. Furthermore, the record does not disclose that the pleading was assailed in any way, or that objections to the testimony were

interposed on that or any other ground. The court submitted several or all of the specific grounds of negligence alleged in the petition to the jury. No exceptions were taken to the instructions. The motion for a new trial was based almost altogether, if not entirely, upon the ground that the driver of the car was guilty of contributory negligence. So far as the record shows, the proposition now argued was at no time raised upon the trial or presented to the court below. For the reasons suggested, it is unnecessary to discuss the law touching the subject of general and specific allegations of negligence.

We find no reversible error in the record, and the judgment is, accordingly, affirmed.—*Affirmed.*

MORLING, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.